## No. 2934.

## J. S. FRISBY *v.* THE STATE.

1. PRACTICE IN THE COURT OF APPEALS.—BILLS OF EXCEPTION, to be considered by this court, must have been approved by the trial judge and filed in the trial court during term time, and within ten days after the trial of the case.

2. SLANDER—EVIDENCE.—INDICTMENT, to charge slander by imputing want of chastity to a female, must substantially set forth the language or whatever else constitutes the imputation of want of chastity, and the evidence, to be sufficient under such an indictment, must prove the allegation substantially as laid. The allegations that the accused said that "S. M. was unchaste and not virtuous," and that he "could at any time have seminal and carnal intercourse with her if an opportunity presented itself," though sufficient to charge slander are not supported by proof that he said: "The whole M. family are whores," and that on "one occasion he could have had carnal intercourse with S. M. if he had had an opportunity."

APPEAL from the County Court of Henderson. Tried below before the Hon. W. L. Faulk, County Judge.

The conviction in this case was for the slander of Miss Sallie Miller, by imputing to her the want of chastity, and the penalty assessed against the appellant was a fine of three hundred dollars and confinement in the county jail for the period of six months.

The opinion of the court sets out the charging part of the indictment.

John Miller, the brother of the alleged slandered female, was the first witness for the State. He testified that the defendant worked for him on his mother's place, in Anderson county, for about three months in the spring of 1887, but quit before the expiration of the term for which he was employed.

Wiley Persons testified, for the State, that between three and five days after the defendant left the employ of John Miller, in 1887, the defendant came to the witness's field where the witness was at work and entered into a conversation with him. In the course of that conversation the defendant told the witness that he could have "done it" to Sallie Miller on one night if he had had an opportunity, but that other young people were in and about the house at the time. He said further, at that time, that Sallie Miller "was a nice maiden; that he inserted two of his fingers into her sexual organ and found it to be as loose as that of a woman who had borne children; that she put her legs across his lap on that night, and that he could have had connection with her, but had no opportunity." About a week later at witness's house, the defendant said, in the hearing of the witness, that the "whole Miller family are whores." Witness could not recollect that on that occasion he qualified the statement by saying, "if the reports I have heard are true." On several subsequent occasions the witness heard the defendant say that the "whole Miller family are whores," and then he always qualified these statements by saying "if all the reports I have heard are true." In the conversation at witness's house, referred to, the defendant also repeated substantially the statement he first made to the witness in the field.

Cross examined, the witness said that Sallie Miller lived with her mother, about a mile and a half from witness's house. No person other than witness and defendant were present when the first conversation in the field began, but before it was concluded other parties—Billy Anderson and Mr. Calhoun, to the best of witness's recollection—came up. The conversation was opened by the witness asking the defendant about rumors current in the neighborhood connecting Sallie Miller's name with his, defendant's, name. Mr. Page, the husband of Fanny Page, was the first person who told witness of the rumors reflecting upon the relations of defendant and Sallie Miller. During the conversation in the field, the defendant also said to the witness that the moon was shining on the night that he was then referring to, and that Sallie Miller pulled up her dress and exhibited

her sexual organ to him, into which he inserted two of his fingers, and found her to be a "d—d nice fifteen year old maiden," and that, at that time, had he had the opportunity, he could have had intercourse with her.  He said that this occurred in the hall of Mr. Miller's house, and that other parties were in and about the house at the time.  Witness never at any time heard the defendant say that "Sallie Miller is unchaste and not virtuous," and that he "could, at any time, have seminal and carnal intercourse with her if an opportunity presented itself—in this, that if he could get her at a private, secluded place"—the language alleged in the indictment.  He said to the witness merely that he could have "done it" to her on that night if he had had an opportunity.

Two other witnesses testified that defendant, on different occasions, made to them substantially the statements testified to by the witness Persons, and that he never, in their presence or hearing, used the identical language alleged in the indictment.

The motion for new trial raised the questions discussed in the opinion.

*Jones & Jones,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.  We find in the record several bills of exception saved by defendant at the trial to rulings of the court upon his application for continuance and as to the admission and rejection of testimony.  Were we permitted to consider these bills of exception they would present one or more very nice questions.  This we can not do, because all of said bills of excption were filed after adjournment of the court for the term.  The court adjourned on the twenty-fourth, and the bills were filed on the twenty-fifth day of July, the day after adjournment.  "Bills of exception both in criminal and civil cases are required by statute to be presented to the judge for his allowance and signature during the term and 'within ten days after the trial,' and when signed by the judge, to be '*filed* by the clerk during the term.'"  (Golden v. The State, 22 Texas Ct. App., 1; Clements v. The State, Id., 23; Rev. Stat., arts. 1363, 1364; Penal Code, art. 686.)  The bill must be filed during the term.  (Farrar v. Bates, 55 Texas, 193; Lockett v. Schurenberg, 60 Texas, 110; Willis v. Donac, 61 Texas, 588.)

It is strenuously contended that the allegations of the indictment are not sustained by the proofs.   This prosecution was for slander, and is brought under provisions of article 645 of the Penal Code.   As set forth in the indictment, the charge is that defendant did "falsely, maliciously and wantonly say of and concerning Sallie Miller that she, the said Sallie Miller, was unchaste and not virtuous, and that he, the said J. S. Frisby, could at any time have seminal and carnal intercourse with her if an opportunity presented itself in this, that if he could get her at a private, secluded place."

For the sake of the argument we may concede that two separate and distinct imputations or charges of want of chastity are contained in this allegation, viz., the first wherein he is alleged to have said in general terms that she "was unchaste and not virtuous," and the second wherein he is charged to have said specifically that he "could at any time have carnal intercourse with her," and that the State could introduce evidence in support of both declarations; still it is clear that to warrant a conviction she was bound to prove one or the other.   Now whilst an indictment would not be sufficient which in general terms alleged an imputation of want of chastity (Willson's Crim. Stat., sec. 1119), still, if what the defendant himself said was in general terms an imputation of want of chastity, as that the female "was a whore" or "unchaste, and not virtuous," if it be alleged that that was what the defendant *said*—was his language, and not a conclusion merely, stated by the pleader—then such allegation would be sufficient.   (Wagner v. The State, 17 Texas Ct. App., 554.)

In all cases of this character the rule is that the language, or whatever else constitutes the imputation of want of chastity must be substantially set forth in the indictment, and must be substantially proved.   "This means that the essential, important, material portion of the slander as alleged must be proved.   All the words alleged need not be proved, but enough of them must be proved as laid, to constitute the offense.   It will not do to allege one imputation and prove another.   Proof must correspond with the allegation."   (Conlee v. The State, 14 Texas Ct. App., 222; Humbard v. The State, 21 Texas Ct. App., 200.)

Applying this well established rule to the case before us, has the prosecution proven the slanderous words substantially?  The exact words charged to have been used or uttered by defend-

ant have certainly not been proven. He is nowhere shown to have said of and concerning Sallie Miller that she was "unchaste and not virtuous." This is not substantially proven by proving a declaration of defendant to the effect that "the whole Miller family were whores." Nor is the declaration that he could have carnal intercourse with her "at any time" proven by the statement that on *one occasion* he could have had such intercourse if he had had an opportunity.

It was said in Lagrone's case, 12 Texas Court of Appeals, 426: "We think the defendant is entitled to be informed in the charge of the particular slander which he is called upon to answer, that he may prepare his defense. He is allowed under the statute to justify by proving the truth of the imputation. How can he come to the trial prepared to avail himself of this defense unless he has been informed of the particular imputation charged against him?"

Because the allegations of the indictment are not sufficiently supported by the proof, the judgment is reversed and the cause remanded.

*Reversed and remanded.*